310 So.2d 826 (1975)
STATE of Louisiana
v.
John Alvis BOOTHE.
No. 55500.
Supreme Court of Louisiana.
March 31, 1975.
Rehearing Denied April 25, 1975.
*827 Jack F. Owens, Jr., Reeves, Lossin & Owens, Harrisonburg, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William C. Falkenheiner, Dist. Atty., George Griffing, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
The defendant was convicted after a bench trial of possession of marijuana and was sentenced to serve six months in the parish jail and pay a fine of $301.00 and costs. He relies upon eight bills of exceptions for a reversal of his conviction and sentence. Since we find that the error complained of in Bill of Exceptions No. 5 warrants a reversal of defendant's conviction and sentence, we pretermit consideration of the remaining bills.
The facts set forth in the record which are pertinent to the bill we consider reveal that on a March evening during 1974 several law enforcement officers executed a search warrant at a dwelling located on Second Street in Jonesville, Catahoula Parish. While the officers were searching the apartment pursuant to the warrant the defendant and his wife arrived at the dwelling and climbed the steps to the front *828 porch. A newspaper reporter parked across the street from the premises being searched observed the defendant look in the window of the apartment. The reporter testified that the defendant saw the officers in the apartment, pulled something out of his shirt pocket and threw it off the end of the porch. The reporter further observed that the defendant then accompanied his wife into the apartment. Immediately thereafter, the reporter notified the officers that he had observed the defendant discard some unidentified item from his shirt pocket. Some of the officers used flashlights in their attempt to locate the material defendant had discarded; one of the officers recovered two marijuana cigarettes from a small yard beneath the edge of the porch. Upon recovery of the marijuana cigarettes the defendant was placed under arrest. A bill of information charging the defendant with possession of marijuana commenced the prosecution which led to the conviction and sentence we review.
Approximately two weeks after the filing of the bill of information defendant sought a bill of particulars from the State. In his motion the defendant asked, "What are the exact contents of any confessions, admissions, or adverse statements, if any, made by the defendant, which statements the State intends to introduce or use for any reason?" In its Bill of Particulars, in an answer corresponding to the abovequoted question, the State replied, "The State has no confession, admission or adverse statement of the Defendant." (Emphasis here and elsewhere supplied.) On the date of trial, which took place more than three months after the State filed the Bill of Particulars, the State gave timely written notice[1] of its intention to introduce into evidence at trial an oral inculpatory statement made by the defendant.
The record reflects that at the time the defendant was given this written notice he immediately objected to the State's intention to introduce any oral statements, and to the introduction of any oral inculpatory statements, on the grounds that the State's claim in the Bill of Particulars that there were no confessions, admissions, or adverse statements foreclosed the State's right to introduce any such statements. The court summarily overruled the defendant's objection and the defendant sought to reserve a bill of exceptions.[2] Subsequent to the trial court's ruling on defendant's objection to the introduction of oral inculpatory statements, the trial proceeded.
The State presented seven witnesses, five of whom were police officers present at the time the defendant entered the premises being searched.[3]All five police officer witnesses testified on direct examination that upon entering the apartment being searched the defendant made some statement to the effect that he had "already smoked his" before arriving at the apartment. One of the officers mentioned the word, "grass"; another officer, when asked to what this statement of the defendant referred, said, "Marijuana, I suppose." After the seven witnesses for the State testified, the State rested. Immediately thereafter, the defense rested, the two attorneys made closing arguments and the court found the defendant guilty as charged.
Defendant argues that his conviction obtained after the introduction into evidence of testimony concerning an oral inculpatory statement by five witnesses should be reversed because the introduction of this *829 evidence, in light of the State's earlier representation that it had no confession, admission or adverse statement, was prejudicial error.
In brief the State does not address itself to this bill of exceptions because it takes the position that the absence from the record of testimony pertinent to the bill of exceptions made a brief on the merits unnecessary. The State cites La.C.Cr.P. art. 844(B) to show that the defendant erred in not attaching the testimony which would show the circumstances and the evidence upon which the ruling was based. The State's reliance on La.C.Cr.P. art. 844(B) is misplaced; the language which the State quotes in support of its position is no longer a part of that Code of Criminal Procedure article, the article having been amended by Acts 1974, No. 207, § 1 (effective July 31, 1974). Article 844 now provides that the party appealing shall designate in writing the errors which are to be urged, and that they are to be filed within the time specified by the trial judge who may submit per curiam comments if he desires. La.C.Cr.P. art. 845 has likewise been amended and now provides the trial court shall specify the time within which the appellant shall, or the appellee may, designate in writing the portion of the record to be lodged with the appellate court. It further provides:
"* * * * * *
"The trial court or the appellate court may designate additional portions which it feels are necessary for a full and fair review of the assignment of errors."
It is clear that since the adoption of the assignment of errors procedure, effective July 31, 1974, and the adoption of the Constitution, effective January 1, 1975,[4] the defendant is entitled to have a record of the evidence presented to this Court so that there may be "full and fair review of the assignment of errors." Error by the trial court in failing to designate a time for specifying the portions of the testimony to be reviewed cannot prevail against the defendant.
Since the trial court failed to designate the time within which the defendant was to specify the portions of the record to be lodged in this Court, and since, consequently, no part of the record accompanied the errors urged by defendant, we ordered the lower court to furnish a complete transcript to enable us to accomplish a full and fair review of the errors urged.
We determine that the trial court's ruling which allowed the State to introduce evidence of an oral inculpatory statement after the State had concealed from defendant the fact that it possessed such a statement was error. Without consideration of whether the contents of oral confessions are subject to pre-trail discovery in a motion for a bill of particulars or in a prayer for oyer (Cf. State v. Nelson, 306 So.2d 745 (La.1975)), there is no justification for judicial approval of patent misrepresentation on the part of the State when an item in an application for a bill of particulars seeks to discover oral confessions or inculpatory statements. To the contrary, the Court has previously addressed itself to a situation wherein the State deliberately misled defendants into believing that it had no confessions or inculpatory statements. In State v. Bendo, 281 So.2d 106 (La. 1973), the Court reversed the defendants' convictions on the basis that the State's failure to allow pre-trial inspection of the tape-recorded inculpatory statements was error. The tape-recorded statements were distinguished from mere oral statements and placed in a category of discoverable statements, along with written statements *830 (see State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945)) and video taped statements (see State v. Hall, 253 La. 425, 218 So.2d 320 (1969)). Nevertheless, the Bendo decision implicitly disapproves the unfair and misleading responses in a bill of particulars which led to defendants' deprivation of the discoverable statements. By its untruthful reply to defendant Boothe's inquiry in the present case, the State lulled "* * * [d]efense counsel into the impression that the state had no statement * * *." See State v. Bendo, supra, 281 So.2d at 109.
The importance of the inculpatory statement introduced at trial is best illustrated by the fact that the State saw fit to elicit the contents of the statement and the circumstances under which it was made from each and every State's witness who was present at the time defendant made the damaging remark. Five law enforcement officers were requested to testify concerning the giving of the statement and its contents. Under the circumstances, it can hardly be argued that the statement had negligible impact or that it was not prejudicial. The repeated presentation of the inculpatory statement was certainly not harmless error.
We are unwilling to hold that this defendant has waived his right to complain of the impact of the State's misrepresentation in the Bill of Particulars by his failure to request a continuance when the trial court overruled his objection to the introduction of the oral inculpatory statement. If a motion for continuance were required in a situation such as this, a defendant would have to obtain time from the court within which to draft such a motion and reduce it to writing, and would have to attach an affidavit of verification in order to gain time to modify his defense. (See La.C.Cr.P. art. 707.)
We refuse to hold that the State can succeed in deliberate or negligent misrepresentation and thereby force the defendant to affirmatively seek additional time within which to adjust his trial tactics or suffer the attendant prejudice without any hope of relief. To so hold would encourage willful or negligent misrepresentation by the prosecution in its pre-trial dealings with the defense and would encourage court delays.
For the reasons stated, we reverse the defendant's conviction and sentence and remand the case for a new trial.
MARCUS and SUMMERS, JJ., dissent and assign reasons.
SANDERS, C. J., dissents for the reasons assigned by MARCUS, J.
MARCUS, Justice (dissenting).
While the state answered in its bill of particulars that it had no confession, admission or adverse statement of the defendant, nevertheless timely written notice, conformably with the provisions of article 768 La.Code Crim.P., was given of its intention to introduce at trial an oral inculpatory statement made by the defendant. The only objection made by this defendant was that the state was foreclosed in its right to introduce any such statements.
Pretrial discovery has not been extended to oral inculpatory statements. Hence, defendant's only possible complaint would be prejudice in his defense. If such were the case, he should have moved for a continuance. No such request was made. In my view, he waived any complaint in this regard. Accordingly, I dissent from the reversal of this conviction and sentence.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by Mr. Justice Marcus.

On Application for Rehearing
PER CURIAM.
We accept the statement of the assistant district attorney who prepared the answer *831 to the bill of particulars that he did not misrepresent the answer which declared that the State had no adverse statements of the petitioner, since he did not learn of them until shortly before trial. Nevertheless, from the point of view of the defendant, the unknowingly inaccurate statement by the State misled his preparation for trial to his prejudice, as well as possibly to misevaluate the potential strength of the case against him. Even though not deliberate, the misstatement corrected only minutes before trial resulted in prejudice to the defendant and entitles him to a new trial.
The application for rehearing is denied.
SANDERS, C. J. and MARCUS, J., are of the opinion that a rehearing should be granted.
SUMMERS, J., is of the opinion that although the assistant district attorney has not misrepresented the answer, the other conclusions of this per curiam are erroneous and a rehearing should be granted.
NOTES
[1] The notice was given just prior to the State's opening statement. See La.C.Cr.P. art. 768.
[2] The instant trial occurred after the 1974 amendment of La.C.Cr.P. art. 841, which amendment did away with the requirement of reserving bills of exceptions. The trial court apprised defense counsel of the change in the law but counsel sought a bill, nonetheless.
[3] The other two witnesses were the reporter who saw the defendant throw the cigarettes off the porch and the expert from the crime laboratory who tested the substance and found it to be marijuana.
[4] Article I, § 19 of the Louisiana Constitution of 1974 provides:

"No person shall be subjected to imprissonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived. The cost of transcribing the record shall be paid as provided by law."